IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| GLEN H. FARNWORTH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV05-493-S-MHW |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| OLIVIA CRAVEN, Director of Idaho Pardon and Parole, | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are the following: Plaintiff's Motion for Discovery (Docket No. 18), Defendant's Motion to Dismiss (Docket No. 23), Plaintiff's Motion to Amend (Docket No. 26), Plaintiff's Motion to Compel (Docket No. 31), Plaintiff's Request for Subpoenas (Docket No. 32), and Defendant's Motion to Seal Affidavit (Docket No. 37). The parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 22). Having reviewed the Motions, Responses, and Replies, as well as the record in this case, the Court enters the following Order.

**MEMORANDUM ORDER  1**

I.

**DEFENDANT'S MOTION TO DISMISS**

**A.    Background**

On February 8, 2005, Plaintiff was tentatively granted a parole date, based upon the condition that he complete a therapeutic community program, as required by the sentencing court.  He entered the program offered by Idaho Correctional Institution (ICC) on April 12, 2005, and quit on August 18, 2005.  *Complaint* at pp.3-4 (Docket No. 3).  He alleges that the program violated his First Amendment right to religious freedom because it required him to recite the Alcoholics Anonymous serenity prayer and to recite other religious philosophies that were not part of his own religious belief system.  *See id.* at p. 4.  Plaintiff states that "he was told that the program was not optional."  *See id.* at p. 5.  The remedy he seeks in this lawsuit is a new parole hearing.

During the time period in question, Plaintiff was housed at the Idaho Correctional Center (ICC).  The ICC, a private prison, has the same Idaho Department of Correction (IDOC) grievance system in place at the state prisons.  *See Exhibit B to Affidavit of Mark Kubinski* (Docket No. 36-4).  To exhaust the administrative remedies system at the prison, an inmate must file an inmate concern form, and then a grievance, and then appeal the grievance decision.  *See id.*

Plaintiff first alleged that there is no grievance system at ICC.  *See Complaint*, at p. 6.  Next he alleged that he sent two Inmate Concern Forms and one Grievance "through the chain of command and received no response written or otherwise."  *Plaintiff's*

**MEMORANDUM ORDER  2**

*Response to Motion to Dismiss*, at p. 1 (Docket No. 25).  Plaintiff also alleged that the prison has no system of logging or numbering the Inmate Concern Forms or Grievances.  *See id.*  Plaintiff has provided no copies of his Inmate Concern Forms or Grievances to support his claim that he completed and sent them as alleged.

In contrast, Defendant has provided the following documentation regarding Plaintiff's efforts to exhaust his grievances.  To put these efforts into perspective, it is important to note that Plaintiff's Complaint was filed on December 1, 2005.  Plaintiff submitted an Inmate Concern Form regarding the religious content of the therapeutic community program on April 12, 2006, that received a response on April 26, 2006; he submitted an Inmate Concern Form in April 2006, that was erroneously dated September 11, 2004; he received a response on April 11, 2006.  He also filed a Grievance on May 8, 2006, that received a response granting the Grievance on May 12, 2006.  *See Exhibit C to Affidavit of Mark Kubinski* (Docket No. 36-5).

**B.    Standard of Law**

Defendant Olivia Craven, Director of the Commission of Pardons and Parole, seeks dismissal of this case for failure to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act (PLRA).  Under the PLRA, a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging "prison conditions."  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural

**MEMORANDUM ORDER  3**

rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 126 S.Ct. 2378, 2384 (2006). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court held that § 1997e(a)'s "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

"[F]ailure to exhaust remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S.Ct. 910, 921 (2007). The Ninth Circuit has determined that such a defense should be brought as an unenumerated 12(b) motion, *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

**C.    Discussion**

Defendant argues that Plaintiff was required to exhaust his administrative remedies within the prison system before filing his lawsuit. Plaintiff counters that he was not required to exhaust his remedies for several reasons, which the Court will now address.

    1.    <u>Whether 1997e(a) Applies to Plaintiff's Claims</u>

The general rule is that litigants do not have to exhaust administrative remedies prior to filing a federal court civil rights case under 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. at 523. Title 42 U.S.C. § 1997e(a) is an exception to the rule of nonexhaustion,

**MEMORANDUM ORDER  4**

which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, the Court noted that there are "two primary categories of suits brought by prisoners": (1) "challenges to 'conditions of confinement,'" and (2) "applications for habeas corpus relief." *Id*. at 527.  That Court noted, "The PLRA exhaustion provision is captioned "Suits by prisoners," *see* § 1997e; this unqualified heading scarcely aids the argument that Congress meant to bi-sect the universe of prisoner suits." *Id*.

After *Porter v. Nussle*, the Court issued *Wilkinson v. Dotson*, 544 U.S. 74 (2005), where the Court clarified that parole claims need not always be brought in habeas corpus, but that § 1983 is available for claims that do not "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."  In other words, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id*. at 82.  In its reasoning for allowing inmates to challenge the state procedures used to deny parole eligibility and determine parole suitability and to

**MEMORANDUM ORDER  5**

seek a new parole hearing or new eligibility review rather than a grant of parole, the *Wilkinson v. Dotson* Court also stated, "we see no reason for moving the line the [precedential] cases draw - particularly since Congress has already strengthened the requirement that prisoners exhaust state administrative remedies as a precondition to any § 1983 action." *Id*. at 84 (citing 42 U.S.C. § 1997e(a) and *Porter v. Nussle*, 534 U.S. at 524).

The language cited above from *Porter v. Nussle* and *Wilkinson v. Dotson* strongly suggests that *all* state prisoner cases that are not classified as habeas corpus cases are considered cases "regarding prison conditions," and are subject to the administrative exhaustion requirement of § 1997e(a). Therefore, the Court concludes that Plaintiff's claims are of the type subject to exhaustion, provided that there is an "available" administrative remedy in the Idaho Department of Correction system.

2.  IDOC Grievance System

The next question is whether the Idaho grievance system was an "available" administrative remedy at the time Plaintiff's alleged civil rights violation occurred. The availability of prison administrative remedies is a question of law. *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 126 S.Ct. at 2384. The Supreme Court recently clarified that "[t]he level of detail necessary in a grievance to comply with the

**MEMORANDUM ORDER  6**

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *See Jones v. Bock*, 127 S.Ct. at 923.

To determine whether the Idaho prison grievance system is an available administrative remedy for Plaintiff's parole eligibility claim, the Court reviews the law governing which Idaho entity has authority to act on Plaintiff's claim.  The Idaho Constitution, article 10, § 5, provides that "[t]he state legislature shall establish a nonpartisan board to be known as the state board of correction . . . [which] shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult probation and parole. . . ."  The Idaho Court of Appeals has noted that "the Legislature implemented this constitutional directive by enacting Idaho Code §§ 20-201 to -249."  *Mellinger v. Idaho Dept. of Corrections*, 757 P.2d 1213, 1218 (Idaho App. 1988).

In particular, I.C. § 20-201 provides: "There is hereby created the department of correction which shall consist of the board of correction and the commission of pardons and parole."  In *Mellinger*, the court further explained:

> The Board, with its constitutionally anchored control over prisons, paroles and probations, is recognized as an agency of the executive branch. *See Spanton v. Clapp*, 78 Idaho 234, 299 P.2d 1103 (1956); I.C. § 20-201(3). The Commission is a closely related but separate executive body. The enabling acts of the Legislature involved no delegation of legislative authority to either body. The Board ultimately derives its powers from article 10, § 5 of the Idaho Constitution. The Commission has its origin in article 4, § 7.

**MEMORANDUM ORDER  7**

757 P.2d at 1218. In addition, the *Mellinger* Court explained that "[t]he executive director is described as the spokesperson for the Commission; however, the director is not a member of the Commission." *Id*. at 1219.

The *Mellinger* Court further outlined the specific duties of each arm of the Idaho Department of Correction:

> Under I.C. § 20-223, the Commission has sole power to determine eligibility for parole. The Commission is further mandated to specify in writing the conditions of parole. I.C. § 20-228. The Board, on the other hand, retains legal custody and control of the parolee. Accordingly, the Board also has the duty to supervise all probationers and parolees, make necessary investigations, report violations to the Commission or courts, and prepare case histories to assist the Commission or courts in making parole or probation decisions. I.C. § 20-219. The magistrate construed these statutes to allow only the Commission to impose substantive, rehabilitative conditions of parole. The Board may recommend substantive conditions, but it may only impose supervisory conditions. The district court agreed with this reasoning. We too are persuaded by the magistrate's analysis.

*Id*. at 1218-19.

Idaho's Prison Grievance Policy is set forth in Policy Number 316, which provides:

> It is the policy of the Idaho Board of Correction that the Idaho Department of Correction provide a process that enables each offender to resolve problems and find answers to questions concerning the operation of the Department as it relates to the offender. It is the purpose of this policy to provide a responsive offender grievance process whereby the offender will be able to address complaints concerning the Idaho Department of Correction.

This Policy seems to imply that the Board of Correction has authority over the entire Department of Correction, which would include the Commission of Pardons and

**MEMORANDUM ORDER  8**

Parole.  However, contrarily, I.C. § 20-201 states that the Department of Correction consists of the Board of Correction and the Commission of Pardons and Parole, and *Mellinger* concludes that the Board and the Commission are separate entities rather than the Commission being subject to the Board.  The statutes support this latter conclusion. *See, e.g.*, I.C. §§ 20-201 &  20-210.   The "Mission Statement" of the Commission also supports the conclusion that the Board and the Commission are separate entities:

> The Idaho Commission of Pardons and Parole is *an independent body appointed by the Governor*.  The Commission is committed to the protection of the public, the rights of victims and to the fair and individualized assessment of each offender.  We support the Department of Correction in its effort to provide services, programs and opportunities for offenders to promote their successful reintegration into the community.  The Commission subscribes to professional ethics and supports all other agencies in order to foster the integrity of the criminal justice system.

Mission Statement of the State of Idaho Commission of Pardons and Parole, *available at* http://www2.state.id.us/parole (emphasis added).[1]  Similarly, the organization chart posted on the Commission's website shows that the governor is the overall authority over pardons and parole.  Beneath him in authority are the executive director (Olivia Craven) and the parole commissioners.  Under the executive director are the hearing officers.  See

---

[1] While *Mellinger* states that "[t]he Board's prescribed powers include the power to appoint a state Commission of Pardons and Parole, and cites I.C. § 20-210, that statute actually states, "[t]he governor shall appoint a state commission of pardons and parole."
   The Court takes judicial notice of the mission statement and organizational chart posted on the website of the Idaho Commission of Pardons and Parole.

**MEMORANDUM ORDER  9**

Commission Organizational Chart, *available at* http://www2.state.id.us/parole.

The Idaho Constitution, implementing statutes, and Commission mission statement and organizational chart all support the conclusion that the Commission is separate from the Board, has separate authority and duties, and that the Commission's authority derives from the governor, not the Board. *Mellinger*, 757 P.2d at 1218. The Department of Correction Grievance Policy has been promulgated by the Board, and there is no indication that the Commission has endorsed or adopted the Policy as pertaining to parole eligibility, and, "[u]nder I.C. § 20-223, the Commission has sole power to determine eligibility for parole," *Mellinger*, 757 P.2d at 1218-19. As a result, the Court concludes that the Idaho Board of Correction Grievance Policy is not an administrative remedy "available" to an inmate to complain about parole eligibility.

**D.     Conclusion**

Accordingly, the Court concludes that while 42 U.S.C. § 1997e(a) applies to Plaintiff's Complaint against Defendant Olivia Craven, the Idaho Grievance Policy specifically applies only to those claims over which the Board of Correction has authority, which does not include parole eligibility claims. Therefore, Plaintiff may proceed against Olivia Craven, and her Motion to Dismiss shall be denied.

**MEMORANDUM ORDER  10**

### III.

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff wishes to amend his Complaint to add claims against the following: Steve Little, St. Anthony Work Camp counselor; Jeannie K. Crockett, Parole Hearing Officer; Vaughn Killeen, former director of IDOC; Michelle Slay, Director of ICC "Lifeline" Therapeutic Community; James Risch, former Governor of Idaho; Bert Schweickart, IDOC employee, and Deputy Warden Miller. *See Motion to Add new Parties and Motion for Supplemental Complaint* (Docket No. 26).

For the following reasons, Plaintiff's Motion shall be denied, except for claims against Defendant Parole Hearing Officer Jeannie K. Crockett. Plaintiff has not shown that Vaughn Killeen and James Risch were personally involved in his issues, and they are no longer in office and thus cannot be included for injunctive relief purposes; therefore, Plaintiff may not assert claims against them. Plaintiff may also not assert his claim that he was moved to a dorm with fewer amenities than the dorm housing the therapeutic community, as there is no right to be housed in a particular unit in prison. *See Meachum v. Fano*, 427 U.S. 214, 255 (1976), and *McCune v. Lile*, 536 U.S. 24, 38 (2002).

Defendant Crockett's authority to act in parole eligibility matters is derived from the executive director of the Commission (Defendant Craven), according to the Commission's organizational chart, and, therefore, the IDOC Grievance Policy does not

**MEMORANDUM ORDER  11**

apply.  As a result, Plaintiff may amend his Complaint to add Crockett as a defendant.  As to the remaining proposed defendants, the Court concludes that because they are non-Commission IDOC/ICC employees who have no authority over parole eligibility, the Idaho Grievance Policy applies, under the following reasoning.

IDOC Policy Number 315, Section 05.00.00, subtitled "Applicability of the Grievance Procedures," provides that  "*[u]nless otherwise specified*, the offender grievance procedure may be used for complaints by offenders regarding *all* policies, conditions of confinement, actions by employees, actions by other offenders and incidents occurring within the jurisdiction of the Department that affect the offender personally" (emphasis added). *See Exhibit B to Affidavit of Mark Kubinski* (Docket No. 36-4). IDOC Directive Number 316.02.01.001, section 04.00.00, defines an "Offender Grievance" as "[a] written complaint by an offender or on the offender's behalf regarding a policy applicable within a facility, a condition in a facility, an action involving an offender of a facility, or an incident occurring within an facility. The same section provides that grievance categories include the following: "Access to Courts; Administration; Classification; Commissary; Complaint Against Staff; Conditions of Confinement; Food; Mail; Medical; Programs; Property; and Security."  Section 05.0300, entitled "Appeal Process," provides that "[t]he appellate authority may forward the grievance appeal to the director or other division administrator when, in the opinion of the

**MEMORANDUM ORDER  12**

appellate authority, the resolution to the grievance is beyond the appellate authority's control." *See Exhibit B to Affidavit of Mark Kubinski* (Docket No. 36-4).

Here, Plaintiff's claims against the non-Commission IDOC/ICC employees focus on the type of programs offered by the facility, not on the parole eligibility decision-making process. As set forth above, the Idaho Constitution, article 10, § 5, provides that the Board has "control, direction and management of the penitentiaries of the state, their employees and properties, and of adult probation and parole. . . ." Therefore, it is clear that the Board's Grievance Policy applies to the remainder of Plaintiff's claims.

The Court now turns to whether Plaintiff exhausted his administrative remedies prior to filing his Complaint. In his Complaint, Plaintiff admits that he did not exhaust the grievance system and states that there is no grievance system at Idaho Correctional Center (ICC). *See Complaint*, at p. 5 (Docket No. 3). Contrarily, in his response to the Motion to Dismiss, he states that he filed Inmate Concern Forms (the first step in the grievance procedure) and Grievances, but that the forms and grievances were not logged and he was not provided with any responses to them. The Court finds that this allegation is not credible in light of his previous statement in his Complaint that there is no prison grievance system at ICC. The Court requested that Defendant lodge a copy of the grievance policy applicable at the time of Plaintiff's complaints, and Defendant has done so. *See Exhibit B to Affidavit of Mark Kubinski* (Docket No. 36-4).

**MEMORANDUM ORDER  13**

Lastly, Plaintiff attempted to exhaust his administrative remedies after this lawsuit was filed. It is clear that § 1997e(a) requires that exhaustion occur prior to the filing of a lawsuit. *See Porter v. Nussle*, 534 U.S. at 524. Therefore, Plaintiff's claims against the remaining defendants cannot be brought in this action.

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Docket No. 23) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Discovery (Docket No. 18) is DENIED as inappropriate under the Federal Rules of Civil Procedure. Discovery is to be directed toward the parties, and the Court is not involved unless there is a dispute that the parties cannot solve themselves.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Amend (Docket No. 26) is GRANTED as to Defendant Jeannie Crockett; it is DENIED as to Defendants Steve Little, Vaughn Killeen, Michelle Slay, James Risch, Bert Schweickart, and Deputy Warden Miller.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Compel (Docket No. 31) is DENIED as inappropriate under the Federal Rules of Civil Procedure. A motion to compel cannot be filed unless discovery is first sent to the other party, the other

**MEMORANDUM ORDER  14**

party disputes having to respond, and then the parties attempt to resolve the dispute but cannot solve the dispute themselves.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion to Seal Affidavit as exempt from disclosure pursuant to I.C. §§ 9-337 and 20-223 (Docket No. 37) is GRANTED.

IT IS FURTHER HEREBY ORDERED that the parties shall consult and determine whether they wish to participate in mediation. If they do, they shall contact Denise Asper, Federal Court ADR Director, at 334-9067, or by mail, at 550 West Fort Street, MSC-042, Boise, ID 83724.

IT IS FURTHER HEREBY ORDERED that the following pretrial schedule shall govern:

1. **Amended Complaint**. Plaintiff shall file an amended complaint no later than **March 30, 2007.**

2. **Disclosure of Relevant Documents:** On or before **May 1, 2007**, the parties shall provide each other with a copy of relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the

**MEMORANDUM ORDER  15**

          Court conduct an in camera review of withheld documents or information.

3. **<u>Completion of Discovery and Requests for Subpoenas</u>:** All discovery shall be completed on or before **August 31, 2007.** Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. The Court is not involved in discovery unless the parties are unable to work out their differences as to the discovery themselves. In addition, all requests for subpoenas duces tecum (production of documents by nonparties) must be made by **July 31, 2007.** No requests for subpoenas duces tecum will be entertained after that date.

4. **<u>Depositions</u>:** Depositions, if any, shall be completed on or before **August 31, 2007.** If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by ten (10) days' written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the

**MEMORANDUM ORDER  16**

court reporter did not make mistakes in transcribing the deposition into a written form, then he can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what he believes he said.  If Plaintiff wishes to take depositions, he must file a motion requesting permission to do so, specifically showing his ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

5. **Dispositive Motions:**  All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs on or before **October 31, 2007.**  Responsive briefs to such motions shall be filed within thirty (30) days after service of motions.  Reply briefs, if any, shall be filed within fourteen (14) days after service of responses.  All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho.  **Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court.  No motion or memorandum, typed or**

**MEMORANDUM ORDER  17**

**handwritten, shall exceed 20 pages in length.**



DATED:  March 14, 2007

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM ORDER  18**